

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**15-085**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | UNDER SEAL |
| | § | |
| v. | § | CRIMINAL NO. H- |
| | § | |
| VERONA K. SPICER, and | § | 18 U.S.C. § 2 |
| JOCELYN PYLES-ELO | § | 18 U.S.C. § 1349 |
| Defendants | § | 18 U.S.C. § 1347 |
| | § | |

United States District Court
Southern District of Texas
FILED

FEB 2 6 2015

David J. Bradley, Clerk of Court

# INDICTMENT

THE GRAND JURY CHARGES:

## COUNT ONE
### Conspiracy in violation of 18 U.S.C. § 1349

### A. INTRODUCTION

At all times material to this indictment:

1. Under Title 18, United States Code, Section 24(b) a health care benefit program was any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service was provided to any individual, and included any individual or entity who provided a medical benefit, item, or service for which payment may be made under the plan or contract. The Medicare and Medicaid programs were health care benefit programs as defined in Title 18, United States Code, Section 24(b).

## THE DEFENDANTS

2. VERONA K. SPICER, defendant herein, at all times relevant, was a resident of Houston, Texas, and the director and administrator of Elite P. Care Medical Services Inc., ("ELITE"). ELITE had two office locations, one in Port Arthur, Texas, and the other at 7447 Harwin Drive, Suite 109, Houston, Texas, 77036.

3. JOCELYN PYLES-ELO, defendant herein, at all times relevant, was resident of Houston, Texas, and a licensed Texas physician.

## THE MEDICARE PROGRAM

4. The Medicare program was created by the Social Security Act of 1965. The United States Department of Health and Human Services administered Medicare through the Centers for Medicare and Medicaid Services ("CMS"). During the dates applicable to this indictment CMS contracted with Trailblazer Health Enterprises, LLC, to operate and administer the Medicare program in Texas. The duties assigned to Trailblazer included the enrollment of physicians, non-physician practitioners, and other entities that submitted claims for payment, processing Medicare claims, and making payments for medical and health services.

5. Medicare was comprised of four different parts. Medicare Parts A and B were applicable to this case. Medicare Part A, also known as hospital insurance, covered inpatient hospital care and home health care services. Medicare Part B,

also known as supplemental medical insurance, covered physician services, physical therapy, and home health services not covered by Part A, durable medical equipment, and preventative and diagnostic services. The Hospital Insurance Trust fund paid for Medicare Part A benefits. The Supplementary Medical Insurance Trust Fund paid for Medicare Part B benefits. The money deposited into the Medicare Trust Funds included payroll taxes from employees, employers, and self-employed people, funds authorized by congress, and premiums. Both Trust Funds were held by the United States Treasury.

6. Individuals with health care insurance are known as beneficiaries. Beneficiaries were entitled to have payments made on their behalf for covered services and supplies, including physician office visits, physical therapy, and home health services. Ordinarily, Medicare made payments to the providers of the health care services and supplies, not the beneficiaries. Medicare payments were electronically deposited into bank accounts designated in electronic fund transfer agreements between Medicare and service providers.

7. Enrollment in the Medicare program was a prerequisite to the receipt of Medicare payments. Each enrollment application required the applicant to agree to certain terms and conditions of participation in the Medicare program. The terms and conditions included the following: (1) to abide by the Medicare laws, regulations, and program instructions; (2) to use the assigned Medicare

identification number only for services provided by the enrollee or pursuant to a valid reassignment; (3) to not knowingly present or cause to be presented false and fraudulent claims for payment; and (4) to not present claims for payment with deliberate ignorance or reckless disregard for their truth or falsity.

8.   Medicare considered a *physician* to be a doctor who was legally authorized to practice in the State in which he or she worked. Physician services were those professional services performed by a physician. Unequivocally, Medicare required that a physician must render a service for the service to be paid for by Medicare. Medicare considered unlicensed graduates of foreign medical schools as interns and residents. Medicare would only pay for services performed by interns and residents that were not part of their official training program, *if* the intern or resident was *fully licensed to practice medicine* in the State in which the services were performed. Services provided by auxiliary personnel could only be billed under a physician provider number when the physician directly supervised the performance of the services, and the physician was present in the office suite or beneficiary home and immediately available to provide assistance and direction if necessary.

9.   Additionally, Medicare would only pay for home health services if a *physician*, i.e. a doctor of medicine, osteopathy, or podiatric medicine, certified the need for home health services, and there was a plan of care for providing the

services, and the services were provided while the patient was under the care of a physician. Continuing home health services required a physician re-certification every 60 days.

10. Claims submitted to Medicare included a Current Procedural Terminology ("CPT®") code that identified the medical service for which payment was sought. Medicare required, in addition to meeting the individual requirements of each CPT® code, that each service billed be medically necessary. The CPT® codes applicable to this case included: 99204, 99212, 99213, and 99214, each of which was intended to be used for *physician face-to-face* office visits, with new or established patients, for various time periods. Also applicable were CPT® 99349 that was intended to be used when a *physician* went to a patient's home to perform a *face-to-face* evaluation, and CPT® 97530 that was intended to be used for therapeutic activities, including physical therapy that involved direct one-on-one patient contact by a physician or a qualified physical therapist.

## THE MEDICAID PROGRAM

11. The Texas Medical Assistance ("Medicaid") program was a joint shared funding federal-state entitlement program that was implemented in 1967 under the provision of Title XIX of the Social Security act of 1965. The Texas Health and Human Services Commission ("HHSC") had responsibility for the

Texas Medicaid program. HHSC contracted with Texas Medicaid and Healthcare Partnership ("TMHP") to administer the Medicaid program in Texas.

12. The duties of TMHP included provider enrollment, claims processing, and claims payment. Like Medicare, Medicaid made payments for claims to providers of services, not the beneficiaries. A prerequisite to the receipt of Medicaid payments was enrollment with Medicaid and agreeing to the terms of participation by signing the HHSC Medicaid Provider Agreement. The HHSC Medicaid Provider Agreement required, among other things, that the provider submit claims that were true and accurate.

13. Medicaid paid for a variety of services for qualified beneficiaries, including medically necessary physician services provided by physicians licensed in the State in which the services were provided, physical therapy, and home health services when there was a plan of care signed and dated by the treating physician. Medicaid was the secondary payor for beneficiaries with both Medicare and Medicaid coverage.

## B. THE CONSPIRACY

14. Beginning on or about May 18, 2009, and continuing thereafter to on or about September 30, 2011, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**VERONA K. SPICER**
**and**

## JOCELYN PYLES-ELO

did knowingly and willfully, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely to execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely the Medicare and Medicaid programs, and to obtain money owned by and under the custody and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services in violation of Title 18, United States Code, Section 1349.

## OBJECT OF THE CONSPIRACY

15. It was the object of the conspiracy to unlawfully enrich the defendants and others by submitting false and fraudulent claims for payment to Medicare and Medicaid for physician services that were not provided by a physician, including physician office and physician home health visits for home health certifications and re-certifications.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy included, but were not limited to the following:

16. SPICER would and did run ELITE and act as the office administrator.

17. SPICER would and did hire a foreign medical graduate to perform patient medical examinations for home health certifications and re-certifications, even though she knew he was not licensed to practice medicine in Texas.

18. PYLES would and did work as a full time physician for the City of Houston.

19. SPICER would and did pay PYLES to sign medical records, including patient evaluation and treatment notes, home health certifications, home health re-certifications, and physical therapy notes, for patients she never saw, never examined, and never treated.

20. SPICER would and did provide the home health certifications and home health re-certifications signed by PYLES to home health companies which subsequently billed Medicare and Medicaid for home health services.

21. SPICER and PYLES would and did submit, and cause to be submitted, claims to Medicare and Medicaid for physician office visits and physician home visits that were not provided by PYLES.

22. SPICER and PYLES would and did submit, and cause to be submitted, claims to Medicare and Medicaid for physical therapy services that were not provided by PYLES.

23. SPICER and PYLES through ELITE would and did submit, and cause to be submitted, to Medicare and Medicaid approximately $1,000,553.00 in false

and fraudulent claims for services not provided by PYLES, and received approximately $508,868.70 as payment for those claims.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

24.     In furtherance of the conspiracy and to effect the objects thereof, the defendants performed and caused to be performed, among others, the acts set forth in Counts Two through Fifteen of this Indictment, hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment, in the Southern District of Texas, and elsewhere; all in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO –FIFTEEN
### Health Care Fraud: 18 U.S.C. §1347

## HEALTH CARE FRAUD

1.      The Grand Jury re-alleges and incorporates by reference as if fully alleged herein, paragraphs 1 through 13 of Count One of this Indictment.

2.      Beginning on or about May 18, 2009 and continuing thereafter to on or about September 30, 2011, in the Houston Division of the Southern District of Texas, and elsewhere,

### VERONA K. SPICER
### and
### JOCELYN PYLES-ELO

defendants herein, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, execute and attempt to execute, a scheme and

artifice to a defraud health care benefit program, namely the Medicare and Medicaid programs, and to obtain money owned by and under the custody and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

### PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

3. It was a purpose of the scheme and artifice to defraud to unlawfully enrich the defendants and others by submitting false and fraudulent claims for payment to Medicare and Medicaid for physician services that were not provided by a physician, including physician office and physician home health visits for home health certifications and re-certifications.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

4. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein, the Manner and Means alleged in paragraphs 16 through 2 of Count One of this Indictment.

### EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

5. On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

**VERONA K. SPICER**
**and**
**JOCELYN PYLES-ELO**

defendants herein, aided and abetted by others known and unknown to the Grand Jury, did execute and attempt to execute the aforesaid described scheme and artifice to defraud the Medicare and Medicaid programs by submitting and causing to be submitted approximately $1,000,553.00 in false and fraudulent claims for services not provided by PYLES, including the claims set forth in the Counts below:

| COUNT | Name | Claim End # | Claim Billing Codes Included | Alleged Date of Service | Date Claim Submitted | Amount Billed Included | Amount Paid by M/care & *M/caid, Included: | Nature of Falsity, Included but Not Limited to: |
|---|---|---|---|---|---|---|---|---|
| 2 | J. H. | 170140 | 97530 | 03/08/10 | 04/13/10 | $64.00 | $49.54 | Physical therapy not provided as billed |
| 3 | E. H. | 882940 | 97530 | 03/23/10 | 04/27/10 | $64.00 | $49.54 | Physical therapy not provided as billed |
| 4 | A. D. | 068552 | 97530 | 03/24/10 | 04/29/10 | $96.00 | $74.30 | Physical therapy not provided as billed |
| 5 | E. J. | 170190 | 99213 | 04/05/10 | 04/13/10 | $72.00 | $53.05 | Physician did not evaluate patient or supervise visit |
| 6 | E. J. | 971012 | 97530 | 04/07/10 | 04/29/10 | $96.00 | $74.30 | Physical therapy not provided as billed |
| 7 | E. H. | 473450 | 99214 | 05/13/10 | 05/18/10 | $105.00 | $79.41 | Physician did not evaluate patient or supervise visit |
| 8 | A.D. | 577090 | 99214 | 05/26/10 | 06/04/10 | $105.00 | $79.41 | Physician did not evaluate patient or supervise visit |
| 9 | J. J. | 702240 | 99204 | 06/03/10 | 06/07/10 | $165.00 | $126.78 *$31.69 | Physician did not evaluate patient or supervise visit |

| COUNT | Name | Claim End # | Claim Billing Codes Included | Alleged Date of Service | Date Claim Submitted | Amount Billed Included | Amount Paid by M/care & *M/caid, Included: | Nature of Falsity, Included but Not Limited to: |
|---|---|---|---|---|---|---|---|---|
| 10 | D. P. | 060610 | 99204 | 06/28/10 | 06/29/10 | $165.00 | $126.78 | Physician did not evaluate patient or supervise visit |
| 11 | C.Ch. | 054590 | 99349 | 07/23/10 | 07/29/10 | $130.00 | $95.72 *$23.93 | Physician did not evaluate patient or supervise visit |
| 12 | S. W. | 144520 | 99204 | 07/26/10 | 08/03/10 | $165.00 | $126.78 *$31.69 | Physician did not evaluate patient or supervise visit |
| 13 | C. Co. | 766940 | 99212 | 08/18/10 | 08/23/10 | $140.00 | $32.29 | Physician did not evaluate patient or supervise visit |
| 14 | C.Ch. | 320220 | 99349 | 09/01/10 | 09/10/10 | $130.00 | $0 | Physician did not evaluate patient or supervise visit |
| 15 | J. H. | 328300 | 99212 | 09/29/10 | 10/20/10 | $45.00 | $32.29 | Physician did not evaluate patient or supervise visit |

In violation of Title 18, United States Code, Sections 1347 and 2.

## **FORFEITURE NOTICE**
## **18 U.S.C. § 982(a)(7)**

1. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States give notice to defendants,

**VERONA K. SPICER**
**and**
**JOCELYN PYLES-ELO**

that upon conviction for a violation of 18 U.S.C. §§ 1347 and 1349 (related to federal health care offenses), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, shall be forfeited to the United States, including at least $508,868.70 in United States currency.

## MONEY JUDGMENT

2. Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable. The amount is estimated to be, but is not limited to, approximately $508,868.70 in United States dollars.

## SUBSTITUTE ASSETS

3. In the event that the property subject to forfeiture, as a result of any act or omission by any defendant,

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value, or

    e. has been comingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of such property, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

> A TRUE BILL
> Original Signature on File
>
> FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY